Thank you. Good morning, Your Honor. Steve Hubachek, Federal Defenders, on behalf of Mr. Campos-Vidal. Your Honor, this morning I'd like to address first the aggravated felony issue and then move on to the sufficiency issue that was raised in supplemental briefs that the Court permitted to be filed over the last few weeks. First, with respect to the aggravated felony issue, our argument turns on the interaction of this Court's recent decision just last week in Snellenberger and the Shepard case and the effect that those two cases have on this Court's prior decision in Velasco, Medina. The way that I see the Shepard case is that with respect to the second stage of the Taylor analysis, Shepard adopted what I would call a defendant-centric approach to what sorts of documents can be used in that second stage analysis. Effectively, it adopted a standard in which the documents that are relied upon have to be documents that somehow show us what the defendant actually admitted at the trial. That's why at the very beginning of the Shepard opinion, it mentioned several things that can be relied upon, and those include the plea transcript, the plea form, the findings of the judge, transcript of a plea colloquy, all things that show us exactly what it is that the defendant admitted. Counsel, we granted the motion of the government to supplement the record to include the plea, the guilty plea. Were you aware of that? I knew that it was filed. I didn't know that Your Honors had granted it. We granted it yesterday. So does that make a difference in terms of your argument regarding what the evidence in the case shows? No, not at all. That guilty plea, as I understand it, was a guilty plea in another case where Mr. Compost pled guilty and effectively didn't dispute the guideline calculations. Just number one, that transcript does not contain a factual admission to what's really the big issue here, which is whether or not he admitted theft of property as opposed to theft of labor and services. But he did admit to having committed an aggravated felony. I don't think that he admitted to having committed an aggravated felony. The actual question and answer are quite convoluted. There are a number of things in there. So I wouldn't concede that he admitted that. But I don't think that we really even need to bother reading that transcript because it is completely barred by this Court's precedence from consideration at this point, which I would have pointed out in a response. But first of all — Why is it barred? What this Court — this Court's rule in a second-stage Taylor analysis is that we only look at documents that are generated in the prior conviction case itself. We don't look at documents that are generated in other proceedings, even those documents that can be called judicial admissions. And — Okay. So maybe I'm — I think I'm confused regarding what proceedings are pertinent here. So tell me what — this is not the proceeding that's at issue? Is that what you're saying? Right. The transcript is not the proceeding that is at issue? That's correct. For the guilty plea? Right. That's a guilty plea from another case of Mr. Campos's. And my point is that no proceeding is relevant in terms of finding out what the prior conviction says except for the proceeding of the prior conviction. So the only thing that we can look at is documents. Only things that we can look at are documents — What case is this transcript from? The transcript that they asked us to supplement the record with? What case was that? That was a prior case of Mr. Campos's. It's the same defendant. Right. He pled guilty before Judge Fitzgerald — I don't know how long ago it was. Okay. 2003. And this Court, in two cases, Cisneros-Perez at 465, Fed Third at page 393, and Toledo Cotley v. Ashcroft at 371, Fed Third at 623-24. Both those cases hold that this Court does not consider judicial admissions made in other proceedings other than the prior conviction that's being used. So the only documents that we can consider are the California documents generated that the government provided in its supplemental excerpt of record. So that transcript is effectively irrelevant. So let's go back to Snellenberger. Right. Back to Snellenberger. Okay. So Shepard adopts a defendant-centric approach that requires that the documents that are used be documents that evidence what the defendant actually admitted. Snellenberger — that's the reading of Shepard that we set out in our reply brief. And then last week, Snellenberger adopted that reading. And I think the key provisions or the key paragraph in Snellenberger — I had — you know, I actually — my 28-J letter cites the slip of pain, but I brought the Westlaw version. But it's at page 3 of the Westlaw version, which is 2007 Westlaw 968393. Well, I thought Snellenberger stood for the proposition that reliance upon a minute order was insufficient, as opposed to an abstract of judgment, which is a different document that's been approved for reliance. The first half of your question is absolutely correct. The second half, you take issue with. I do. You don't think that an abstract of judgment is a reliable document for purposes of determining a prior conviction? I do not, under Shepard. I think this Court held that it was considered — could be considered under Velasco-Medina, but Shepard has changed the analysis that's applied. Snellenberger recognizes that. And if I could just briefly read from Your Honor's — not Your Honor's, but this Court's decision in Navidad-Marcos, describing an abstract of judgment, quote, it does not contain information as to the criminal acts to which the defendant unequivocally admitted in a plea colloquy before the Court. But, counsel, you're asking us to overrule our precedent, actually. Oh, I am, yes. We can't do that unless it's really clear that our precedent has been abrogated. It is really clear. That's the Miller v. Gammey standard, and I acknowledge it and I embrace it. Shepard comes along and says that you have to give us documents that show what the defendant admitted, like a plea colloquy, not present here, a plea form, not present here, a judge's findings based upon a Rule 11-type proceeding, not present here. None of the things that Shepard says are important are present in this record. That's an exclusive, though. That was not an exclusive list. I agree. I agree. Because if you have — But it does say, or some comparable judicial record of the information. That's absolutely right. And my point is, is that an abstract of judgment does not — and this Court has already said it in Navidad-Marcos — does not reflect precisely what the defendant — That particular abstract of judgment. Not abstracts of judgment generally. Well, I mean, I think they're all pretty much the same. I mean, it's a form — They're not all the same. But doesn't the abstract, in this case, say theft property? Yes, it does. It does. But see, the thing is, is that an abstract is not a judicially created document. It's an administratively created document, and the defendant doesn't see it or approve it. All that sort of stuff is set out in Navidad-Marcos, and in Snellenberger, this Court found that the single most important thing was that there was no showing that the minute order in that case, which I agree is not exactly the same thing as an abstract, but the minute order in that case did not demonstrate that the defendant had ever had it shown to him. Well, and that's at page 3 of the Snellenberger case. So the bottom line is, is that the document now post-Sheppard, the document that the government wants to rely upon, has to evidence what the defendant admitted. This document does not do that. Navidad-Marcos holds that it does not do that. This is simply a document that's generated non-judicially by some faceless bureaucrat, and it's simply not enough under the Sheppard standard, as this Court adopted in Snellenberger. And I think the important thing about Snellenberger is that it did consider a minute order, but it adopted an analytical approach to Sheppard, which is binding, I think, on this panel, just as any other holding of this Court is. So this Court has to apply Snellenberger's reading of Sheppard, and Snellenberger's reading of Sheppard precludes the enhancement here. Now, unless Your Honors have any further questions on that issue, I'd like to move on to the sufficiency issue with respect to the 1326 count. The issue here is that this Court's recent decision in Castillo-Basas requires that there's effectively a tripartite showing that's necessary to meet the deportation element. One is a proceeding involving the defendant, two is a warrant that's issued as a result, and three is the execution of that warrant. Now, I will concede, with respect to the second and third elements of that definition, that the government offered sufficient evidence on those. There's a warrant of deportation that was admitted at trial, so numbers two and three, I don't have an argument on. My argument centers solely on the first one. There's no evidence here that there was a deportation proceeding in which Mr. Campos-Fidal participated. The reason I say that is that unlike almost all the cases that we see, there was no deportation order entered into evidence in this case. There was no transcript of the deportation hearing. There was no witness who came in and said, I was at the deportation hearing, or I was the immigration judge, and I ordered this gentleman deported. There's no immigration court-generated document which reflects that there actually was a deportation proceeding here. Castillo-Basas is quite clear that that is required. It's the first portion of the three-part definition that it adopted. If I could, I'd just like briefly to touch upon the government's arguments against our reading of Castillo-Basas. First, it says that that part of Castillo is dicta that sets out the definition of a deportation, and that's clearly not true. The Castillo case is a double jeopardy case. It was applying Ash v. Swenson. So it was required in order to apply Ash v. Swenson to determine precisely what the basis of the acquittal was in the previous trial. So what it did was it focused in and found what the issue was. The jury acquitted in that case because the government failed to meet its burden, in the jury's view, of demonstrating that there was a proceeding in which Mr. Castillo-Basas was actually deported. So you're saying a deportation order is not enough to show that there was a deportation? Oh, no. I think that if – I wouldn't be – well, I probably would be standing here, but I wouldn't be saying that the evidence is insufficient if they put in a deportation order, but they didn't. But if the existence of a deportation – if somebody testified that a deportation order was entered, that's not adequate in your view? Well, that didn't happen in this case. How was the deportation proved in this case? The only document that was offered was a warrant of deportation, and that document was put into evidence through the witness who actually executed the warrant. But didn't that witness testify that he saw him deported? No. He actually testified, and I cited it in the supplemental brief. He testified that he is not present at deportation proceedings. Okay. So the warrant – in your view, the warrant of deportation is not sufficient evidence that the deportation actually occurred. That's your argument? Well, my argument is it's insufficient on the first prong of the three-part test in Castillo-Basas. I agree that it's sufficient to show that a warrant was executed and that he left the United States. It's not sufficient to show that there was effectively a judicially conducted proceeding, because the immigration judge is not involved in the warrant. How do you get the warrant of deportation if you don't have a deportation proceeding? Well, I don't know how you get it other than – Isn't that a reasonable inference that if there's a warrant of deportation that there was a deportation proceeding? It's an inference that can be drawn, but it can't be drawn – It's not reasonable? No, not beyond a reasonable doubt, no. Because, you know, there are all kinds of proceedings that exist. There are proceedings where there's no immigration judge at all. There's voluntary returns. There's all kinds of things that could have occurred. The bottom line is that the definition adopted in Castillo-Basas requires that there be a showing that there's an actual proceeding in which the alien participates. And there was no evidence of that in this case? No evidence of that in this case. Unless Your Honors have any further questions on those two issues, I'd like to reserve the rest of my time for a moment. Thank you, Your Honors. May it please the Court. My name is Larry Spong, representing the United States in this case. As to the aggravated felony, there is one thing in this case that so far has been ignored, and that is a well-pleaded information. Furthermore, it is a one-count information. There's only one count he could have possibly pled guilty to, and that is a grand theft count. In that count, specifically alleges a theft of, quote, personal property of value exceeding $400, paren $400, to wit, toolbox and tools, the property of Rodney Billing. There is no set of circumstances under which this could be a theft of labor or services. There are simply none. The abstract is simply used not to say what the facts of the underlying conviction are, simply that the conviction exists. That is beyond dispute. And in Velasco, Medina, this Court said that where all the elements are in the information that, and to which the defendant pleads, then he has admitted all the facts in the information. Counsel, in this motion to supplement the record, you sent us a guilty plea from a different case? I did. Well, you know that that's not appropriate. Oh, I think it's not, I think it's, they're correct in it's not relevant to look at what the plea hearing in that case for sure. But it is relevant to, at some point, this defendant must be stopped from saying, I wasn't convicted of an aggravated felon. He keeps admitting it. At the 11th hour, you shouldn't have sent us a transcript from a different case. Your Honor, I The implication was that this was the pertinent transcript. That's why I voted to supplement the record with this. You should not have done that. Okay, I apologize, Your Honor. I thought I made it clear that it was from a different one. And I do, it's certainly not justification, but by explanation, there are lots of transcripts in this case. This person has a huge record. And it wasn't until recently that I discovered that this transcript, in fact, existed. That's not a justification. But it's not relevant. And at this point, I would concede. But the law is clear. Where there's a well-pled information, and the defendant pleads guilty to that information, he admits all the elements. He admitted, then, that he stole the toolbox and tools, the property of Rodney Billet. Now he points to the Navi Dodd-Marcos case. All that stands for is that an abstract of judgment you can't rely on for the facts of what they pled guilty to. But you can use it for the fact that he didn't, in fact, plead guilty. In other words, he can have pled guilty. He can supplement the information. Right, it supplements the information. And that's Velasco Medina. So I think it's beyond dispute that he pled guilty here to an aggravated felony. As to Castillo-Bassa, it certainly was victim for the court to simply restate what the only reason those three things are relevant is because that's what the jury, the district court, instructed the jury. The district court was wrong. And now what has happened is the appellate court, in restating that to then go on and decide the perjury question, to which those instructions were relevant, has now set up new law that didn't exist before. The deportation has always been, all we have to prove is a physical removal from the United States. That's what that has always been. Where was that proved in this case? That was proved by the warrant of deportation and the person who testified that he's the one who served that warrant and watched Mr. Campos Vidal go across the border. I thought opposing counsel said that that witness testified that he did not observe him. He did not observe a deportation proceeding. Okay. But he did see the deportation. That was the question I asked. I thought he answered that in the negative because I asked if he testified whether or not he actually witnessed him. I sort of, as I was sitting here, thought that that was a mix-up in the question and answer. I heard it that morning. But even if we assume somehow that Castillo-Bas is correct, the case of Medina, 236-Fed 3rd at 1031, says the warrant itself is sufficient to prove that a proceeding took place. So even if Castillo-Bas is right and we have to prove a proceeding, we did that in this case. We did that based on law that's already been settled, and that is Medina. Well, how do we know that the warrant wasn't just presented to some judicial officer who signed off on it? Well, the warrant, what we know is it's a warrant signed by an immigration officer who then executes that warrant. Medina said that's sufficient. You don't need a hearing? That's what you're saying. We do need a hearing, but what Medina says is the fact that a warrant exists proves the existence of the proceeding. Well, that doesn't seem logical. Well, that's the law. That's all I can say. I think it is logical because how could a person deport it? And that order only exists based on the deportation proceeding, and I think that's the common sense approach that Medina is taking. Medina is saying, look, there's a warrant here. It's based on a deportation order from a deportation proceeding, and it's sufficient for a government. But that doesn't mean there was a hearing on the warrant. Well, there has to be. It could mean, as it did in this case, it was a reinstatement of a deportation, but even that means there was at some point a deportation order. Even the case is recognized that a defendant can challenge an earlier deportation proceeding based on a reinstatement, so that change simply follows, and that is what the law is under Medina. But we only need to reach that if you do agree, in fact, that somehow Castillo-Bassa has changed the law in this circuit, which it can't do. We have to deal with cases that have been adjudicated. We can't just say, well, it's wrong, so we ignore it. I mean, it's out there, so we have to address it, and we have to reconcile it with all of the other cases that are out there, so we have to deal with it. Well, I think you can deal with it, but the way to deal with it is the way it is, and that's that it's dicta. It's simply irrelevant to that case. It's just simply irrelevant. What is relevant were the specific jury instructions, and that's what the Court of Appeals is repeating. Assume we don't lightly disregard our colleagues' holdings, okay? Then, if we don't agree with you that it's dicta, how do we reconcile the governing law in this case? The way you reconcile it is by saying, if those three things exist, the three elements, the proceeding, a warrant, and the actual removal, pursuant to Medina, the warrant proves the proceeding. So even though Castillo-Bassa sets them out as three separate elements, proof of the warrant appears, too. Yeah, Medina shows how you prove the elements that are articulated. Yes, and that's well settled, and that's what was done in this case. With that, it's sufficient. So in any event, even if it was somehow error, it's certainly harmless. The defendant here did not object in the PSR to this deportation. In fact, he admits that he was convicted earlier, and that was part of the reason I sent that, that he admitted. So it's beyond any reasonable doubt that this defendant was deported pursuant to a proceeding that fits Castillo-Bassa. We understand your argument on that. Thank you. First, let me make clear my answer to Judge Rawlinson's question. The person who testified at trial is the person who executed the warrant. He witnessed my client go across the line into Mexico. I thought you said no to that question. I thought your question was, was he present at the deportation? I thought you meant the he was not present at the proceeding. I understand. When I said deportation, you were thinking proceeding. I was thinking departure. Right, because the proceeding, obviously, is the most important part that the government didn't prove, which is why my client should get a Rule 29. I understand. What do you do with Medina? Well, I'm glad Your Honor brought that up. I read Medina completely differently in the government. It doesn't say anything about what is sufficient evidence, and the procedural posture of Medina precluded it from doing that. The Medina case is a case where the indictment says that the government does not have a tape of the deportation proceeding, and then he took a conditional plea from that ruling. So the question of what evidence is sufficient at trial was never raised, never briefed, and never decided in Medina. Well, Medina did say that if there is a warrant of deportation, that's sufficient to establish that the proceeding occurred. I don't agree that it shows that it's sufficient evidence beyond a reasonable doubt. Well, what did Medina say, though? It says, the use of a deportation order or warrant in those circumstances does not require the inappropriate and improper reliance on a factual finding from a prior administrative proceeding. Yeah, it says with regard to the element of prior deportation, the government merely needs to prove that a deportation proceeding actually occurred with the end result of Medina being deported. Agreed. And then it goes on to say what you read. Right. And I don't think that that can be read to say that if you merely offer a warrant of deportation, that that's proof beyond a reasonable doubt of the three components of the definition of deportation. And I also think that the law set out in Medina there as to what deportation consists of. But it says that it merely shows that the proceeding actually occurred. Right. Is it a deportation order or warrant? I mean, there's no – with all due respect, this is a pretrial challenge. I don't even know how it even got past the dismissal motion. It's still a resolution. I mean, regardless of the procedural posture of the case, this wording is pretty clear as to the effect of the warrant. In my reading – I appreciate that, Your Honor. And that's why I want to address it. It's a pretrial challenge to an indictment. So the indictment standard is not proof beyond a reasonable sufficient evidence to support an indictment, which, by the way, is an inquiry that they shouldn't be conducting because the Fifth Amendment grand jury right doesn't allow for sufficiency challenges like the one the defendant challenged here. But the bottom line is, is that the issue in this case is, is there probable cause to believe there's a deportation? And this case holds that there is sufficient evidence under that standard. But this is a pretrial challenge. This is not a Rule 29 appeal, such as we've raised in this case, where we're saying that the evidence offered at trial is not sufficient under the beyond a reasonable doubt standard. So it's a completely different standard. And the words reasonable doubt don't appear in the paragraph that we're talking about now, probably because we're talking about a pretty – But if it's unrefuted, it is proof beyond a reasonable doubt. If it's unrefuted evidence, I think you can draw the reasonable inference. Why is that not proof beyond a reasonable doubt? I don't believe that it's proof beyond a reasonable doubt because the warrant of deportation is not executed by, excuse me, is not generated by an immigration judge. It's generated by an INS officer's Mr. Spong claim. So it doesn't have to be proof beyond all doubt. It's just proof beyond a reasonable doubt. Well, I think Medina doesn't stand for that. It doesn't say anything about proof beyond a reasonable doubt. I mean, I understand Your Honor's reading of the paragraph, or the reading at least that you're proposing. I disagree with it because of what the actual standard was in that case. All I'm saying is that that's proof that can be presented to the finder of fact. And if that proof is unrebutted, then it becomes proof beyond – just with any other proof, inferences or circumstantial evidence, then it becomes proof beyond a reasonable doubt if it's not rebutted in any way. I don't agree that the testimony of a person who did not attend and does not attend immigration proceedings and the document offered by him that does not involve a judicial officer from an immigration proceeding is proof beyond a reasonable doubt of a proceeding that took place in front of an immigration judge. If our case authority says that if a warrant of deportation is issued, that supports a reasonable inference that the deportation proceeding occurred, you don't think that would be sufficient to justify a finding of that element beyond a reasonable doubt if it's unrebutted? If the warrant – if there's no – there's no question about the warrant, there's nothing to indicate that the warrant has been compromised in any way, you still don't think that would be sufficient to support a finding beyond a reasonable doubt? No, because it's a completely different proceeding. It doesn't involve the immigration judge at all. The execution of the warrant, it's basically a non-discretionary administrative act. The deportation hearing itself involves findings of fact. It's presided over by an immigration judge. Discretion is exercised. It's an entirely different – But the only issue is whether or not that actually occurred, not whether or not it had all the panoply of administrative trappings. Agreed. I'm trying to point out the dichotomy between the administrative act of a warrant being executed and a different quasi-judicial act of a deportation proceeding, and there's no evidence that that occurred. I agree that the government doesn't have to prove what a good hearing it was, but it does have to prove there was a hearing. But the warrants – I mean, the warrants don't appear in a vacuum. That's – I think that's the point that Medina's trying to make, that that's evidence that the proceeding occurred if you have the warrant. There is a presumption of regularity. So that's why I have difficulty with your argument. What do the rules say about issuing – issuance of those warrants? Well, they can be issued after a number of different types of proceedings. I mean, they can be issued after a deportation hearing before an immigration judge or in a reinstatement type proceeding. There are various ways that it can be – Well, how was it done in this instance? Well, the – in this instance, if it had been proved – they would have proved that there was a hearing before an immigration judge, and they didn't prove that at trial. Can a warrant issue outside of a hearing? Yes. How does that occur? Well, outside of a hearing conducted by an immigration judge, yes. I mean, for instance, there are reinstatements that are issued by just immigration officers. So it can be issued outside the auspices of an immigration judge. But it goes right back to the prior proceeding. So it's linked to the prior immigration proceeding. That's correct. I agree. I don't agree that – and this isn't really an issue in this case, but I think after Morales-Escuero that said that you don't have any sort of criminal penalties attaching to reinstatements, I don't think that would be sufficient evidence in a jury trial under a 1326 offense at this point in time. Well, we don't know. But that's not an issue in this case. Right. Now, if I could, I'd like to just briefly return to the – You almost used up your time. But the government left some time on the clock. Well, it's my decision whether or not – Well, you said that before. Just hold on to what you said before. I'll try not to be boring. You've got a good lawyer.             I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry.         I'm sorry. I'm sorry, I'm sorry. I'm sorry, Mr. Spong made a big deal about the information. And this Court has held time and time and time and time again that an information alone is not enough. Shepherd makes clear that you need an information, plus, you need some evidence to show what the defendant admitted. There's really not any distinction, I think, rationally that can be drawn between the minute order in Snellenburger and the abstract here. In Snellenburger, the guy was charged in a charging document with a sufficient crime. And then they offered the minute order to show that he had been convicted of that crime. And this Court said that it wasn't enough. I can't think of any reason why an abstract would be better evidence than a minute order since neither one of them show what the defendant actually admitted. And this Court in Navidad Marcos specifically held that an abstract doesn't say what it is that the defendant admitted in the portion that I quoted earlier. So this is not really a good way that I can see to have Snellenburger and an affirmance in this case because you'd be saying that, well, an information is corroborated by an abstract in a way that it isn't corroborated by a minute order. There's no basis for that. And Navidad Marcos really precludes that type of analysis. And then finally, with respect to the Lascaux-Medina, Shepherd, I do continue to assert that Shepherd overruled that case. And Snellenburger affirms that it's overruled. And if you go back and you look at the Lascaux-Medina, the Court, including the Judge Ferguson When an abstract, the clerk that issues the abstract got the file and they're just certifying that there was a conviction in this case. Right. They certify that there's a conviction, but not what the defendant admitted. And the point is that that clerk... That's right. But it carries more weight than a minute order. Well, I don't think that the clerk who issues an abstract is differently situated at all than one who issues a minute order. Well, but the clerk that issues the abstract is looking at a document that's signed by the Court. Well, I... It's been a conviction. We don't have any evidence as to how they're actually produced. Well, I'm telling you how they're produced. All right. Well, in Navidad Marcos, the Court pointed, this Court pointed out that they're unreliable and that they frequently have to be corrected. And ultimately, if it's to use to send the guy off to prison, it doesn't matter to the prison officials, you know, whether his sentence is 16 months based upon theft of property or 16 months based on theft of labor. Are those sent to the counsel, the abstracts of judgment? How are they corrected? You know, that was pointed out in Navidad Marcos, and I honestly don't have any information beyond what Navidad Marcos said. I've not really got a lot of state court experience. So finally, Your Honors, the point is trying to... What is the government doing about this problem now in San Diego? With respect to the abstracts? Well, this is an unusual case because usually what you have is the plea form, where the defendant, you know, says, this is what I did, and then he signs it. Or you have findings by a judge, or you have, in many cases, the actual transcript of the plea. But we don't have any of those things here. So it's actually a rare situation to rely solely on information in an abstract, as is the case here. So I don't think it's really a problem. I think in this case, the evidence is insufficient. I don't think it's going to affect a tremendous number of cases, but this is the one that it will affect. If I don't have any further questions, I'll submit, and thank you for the additional time. Let me ask counsel for the government, what are you doing about these situations? Your Honor, it's difficult because what we're left with is, in fact, what I did was I called the court and asked... What court? The court in which he pled guilty in 1994. The state court. And asked them to get in the archives and give me everything they had. And everything they had was what probation had already given the judge in this case. So you're kind of relying on whatever the state process is, with no control over it. Exactly. We have no control over what the state produces and what the state retains. And so we certainly do, and probation does try their best to do everything they can to get all of the documents, but... What was the court, where did you make your inquiries? It was the Superior Court in Los Angeles. Well, who'd you talk to? I talked to a Mr. Herrera, who was in the archives. And I spoke to him personally on the phone, and I had him tell me what he had in his file. And as he did that, I went through all the documents I had, and it was even, interestingly enough, in the same order. What he had was what I had. So what did they do with that stuff? They store it somewhere, I don't know. I mean, he had to go to their archives to find it. Luckily, he happened to be there, and he was the person I got to talk to. Well, did you talk to the clerk of the court? No. I was not able to talk to the clerk. What I did was attempt to call the clerk's office, and they referred me to the people who store the records. And that's when I was referred to Mr. Herrera. All right, so you really didn't have much. All right, now we come to Jada Toys v. Mattel.
judges: Pregerson, Rawlinson, Sandoval